**Jadran FERESIN, Petitioner,**

v.

**John ASHCROFT, Attorney General,\* Respondent.**

No. 02–70989.
Agency No. A72–524–403.

United States Court of Appeals,
Ninth Circuit.

Submitted May 7, 2003.\*\*

Memorandum filed Aug. 6, 2003.

Amended Dec. 12, 2003.

Decided Dec. 12, 2003.

---

or after January 1, 2002. Therefore, the prior version controls Walker's claim. *See Jebian,* 349 F.3d at —— n. 5.

\* Because the Immigration and Naturalization Service ceased to exist on March 1, 2003, Attorney General John Ashcroft has been sub-

stituted as respondent pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

\*\* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Kaye A.Y. Evans, Beverly Hills, CA, for Petitioner.

Regional Counsel, Laguna Niguel, CA, Los Angeles District Counsel, Office of the District Counsel, Los Angeles, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, San Francisco, CA, Donald E. Keener, John J. Andre, DOJ–U.S. Department of Justice, Washington, DC, for Respondent.

Before BROWNING, B. FLETCHER, and SILVERMAN, Circuit Judges.

## ORDER AMENDING MEMORANDUM AND DENYING REHEARING

The Memorandum filed on August 6, 2003, is withdrawn and replaced with the Amended Memorandum filed concurrently with this order.

With the memorandum as amended, the panel has voted to deny the government's petition for panel rehearing. The petition for rehearing, filed September 26, 2003, is DENIED. The mandate shall issue forthwith.

## AMENDED MEMORANDUM***

Jadran Feresin, a Roman Catholic Croatian, seeks asylum and withholding of removal. Feresin suffered lasting, disfiguring injuries from severe beatings he endured for his refusal to participate in genocidal acts while in the Yugoslavian army, and refused to join – and publically criticized – both the Yugoslavian and Croatian armed forces because of their acts of ethnic cleansing and genocide. The Immigration Judge ("IJ") granted Feresin's petition for asylum. The IJ held that Feresin

***This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

testified credibly, that he demonstrated past persecution, and that the INS failed to rebut the presumption that he had a well-founded fear of future persecution. The Board of Immigration Appeals ("BIA") reversed and held that Feresin failed to prove that conditions in Croatia had not changed sufficiently to rebut the presumption and that there was insufficient evidence of compelling reasons for his unwillingness to return to Croatia to relieve him of the burden of demonstrating a well-founded fear of future persecution. We reverse the BIA because we conclude that the evidence of the severity of Feresin's past persecution plainly was sufficient under 8 C.F.R. § 208.13(b)(1)(iii) so that he need not show a well-founded fear of future persecution. *See Lal v. INS,* 255 F.3d 998, 1002–03 (9th Cir.2001); *Matter of Chen,* 20 I. & N. Dec. 16, 21, 1989 WL 331860 (BIA 1989). We also hold that Feresin is entitled to a presumption that he is eligible for withholding of removal and remand to the BIA for it to consider whether the government has rebutted this presumption.

### I. Eligibility for Asylum

■ A showing of past persecution raises a presumption of a well-founded fear of future persecution. *See Navas v. INS,* 217 F.3d 646, 654 n. 8 (9th Cir.2000). The government may rebut that presumption by showing that country conditions have changed so that the asylum applicant's fear of future persecution is no longer reasonable. *Id.* Under the plain language of 8 C.F.R. § 208.13(b)(1)(ii), it is "the INS [that] bears the burden of demonstrating by a preponderance of the evidence that changed country conditions rebut the presumption of a well-founded fear of future persecution." *Navas,* 217 F.3d at 662. Such evidence must show, on an individualized basis, that a particular applicant's fear of future persecution is not well-founded. *Id.* However, if applicants "were subjected

to severe forms of past persecution[, they] need only demonstrate the severity of their past abuse," *Lal,* 255 F.3d at 1002, and under a "humanitarian exception to the changed country conditions rule developed in [the BIA's] own published opinion, *Matter of Chen,* and later codified in regulations relating to asylum," *id.,* they are relieved of the necessity of demonstrating a well-founded fear of future persecution. *Id.*

In this case, the IJ specifically found that Feresin testified credibly, and the BIA did not upset this finding. Accordingly, we accept as undisputed Feresin's testimony. *See Baballah v. Ashcroft,* 335 F.3d 981, 984 n. 1 (9th Cir.2003) (citing *Singh v. INS,* 94 F.3d 1353, 1356 (9th Cir.1996)).

The BIA erred in holding that the record did not indicate that there were compelling reasons to relieve Feresin of the burden of showing a well-founded fear of future persecution because of the severity of his past persecution. As we explained in *Lal:*

> It is clear from reading *Matter of Chen* that the BIA intended to except from the requirement of proving fear of future persecution those applicants who suffered severely under past persecution. These people are excepted because, as the case explains "[e]ven though there may have been a change of regime in his country this may not always produce a complete change ... in view of his past experiences, in the mind of the refugee."

255 F.3d at 1005–06 (quoting *Matter of Chen,* 20 I. & N. Dec. at 19).

The record in this case compels the conclusion that Feresin suffered severe past persecution that entitles him to the humanitarian exception set out in 8 C.F.R. § 208.13(b)(1)(iii) and *Matter of Chen.* We need not recount the entirety of Feresin's persecution as set out in the record, but

instead note the most pertinent examples. Feresin credibly testified that he spent fifteen months in the Yugoslavian army from 1989 through 1991. He served on the front line as a tank soldier and was ordered to fire tank shells at the city of Vukovar, in which more than 500,000 persons lived, many of whom were civilian non-combatants,[1] during the Yugoslavian army's attacks on that city. Feresin testified that, at first, he deliberately attempted to miss the targets in the city that he was ordered to shell because he believed it was wrong to kill civilians because of their ethnicity. When his subterfuge was discovered, he disobeyed direct orders from his battalion commander by refusing to fire at all. As a consequence he was taken from his tank and severely beaten.

Around that time, Feresin witnessed a Serbian officer have other members of his unit—Croatian soldiers and two Muslim soldiers—executed to make an example of them. The soldiers had refused to obey the same orders that Feresin had been given to participate in ethnic cleansing. The soldiers were taken a few feet from Feresin and shot. The officer stated that "this is an example and that it could happen to anyone who, who would not obey." Feresin testified that only luck saved him from being selected as well.

Feresin also testified credibly that he was imprisoned and severely beaten "until practically dead" on a weekly basis while he was in the Yugoslavian army because he was Croatian. He was given no medical treatment. As a result of his beatings, his jaw and his nose were broken, resulting in a continuing physical deformity that the IJ specifically noted at Feresin's asylum hearing. During the beatings, his tormenters called him an "Ustasha"[2] and told him that his beating was "for you and your Croatian Jesus."[3]

After he left the Yugoslavian army in 1991, both Serbian paramilitary groups and the Croatian military police sought to draft him. He was forced to hide from both groups and on one occasion he had to leap from a balcony to escape. His parents came under intense pressure: His father was threatened and his father's car was demolished. In 1994, Feresin's father was in Zagreb. Afterward, although he was 57 years old, he was forced to join the Croatian army by military police who came in the middle of the night and took him to the front line. Feresin does not know what happened to his father after that and does not know if his father is still alive. Nor was Feresin's mother spared. She was repeatedly questioned about Feresin's whereabouts while he was in hiding and about whether he intended to return to the Balkans after he had left for the United States.

In 1992, after an extensive interview with a journalist, a newspaper article was written about Feresin that detailed what he had experienced in the Yugoslavian army and publicly documented the ethnic cleansing in which he refused to participate.

1. It is common knowledge that in 1991–92 Vukovar, a predominantly ethnically Croatian city in Eastern Slavonia, was the site of some of the most extensive destruction and widespread ethnic killing in the Balkans caused by Yugoslav army shelling. *See, e.g., http://balkansnet.org/vukovar.html* (last visited December 2, 2003); *see also* MISHA GLENNY, THE FALL OF YUGOSLAVIA: THE THIRD BALKAN WAR (rev. ed. 1996).

2. "Ustashas" were Croatian nationalist separatists who collaborated with and supported the Nazi German occupiers of the former Yugoslavia during World War II. *See* 2 THE NEW SHORTER OXFORD ENGLISH DICTIONARY 3532 (1993) ("Ustashi"). The term has connotations similar to "Nazi."

3. We note that a majority of Croatians are Roman Catholic, while a majority of Serbs are Orthodox.

After the article appeared, he began to receive death threats from Serbian paramilitary groups and moved to another town for six months as a precaution. Because of the article, Feresin also was pressured by the ruling political party in Croatia to join the party and/or its military organization as a junior officer. He refused to join or participate because he believed that Croatian forces were also responsible for ethnic cleansing. Because of his refusal, he was given an ultimatum to reconsider within ten days or face threats to his family. Although, after ten days nothing happened, Feresin credibly testified that he nonetheless fears persecution in Croatia because of his refusal to participate in Croatian politics, and he fears he will be killed or otherwise persecuted by Croatian or Serbian groups if he returns.

In sum, the uncontroverted record documents Feresin's severe past persecution on the basis of, inter alia, his refusal to participate in genocide, his ethnic identity as a Croatian, his attributed religious beliefs as a Catholic, and his actual and attributed political beliefs. The evidence compels a finding of past persecution that qualifies Feresin for the humanitarian exception of *Matter of Chen* and 8 C.F.R. § 208.13(b)(1)(iii), (b)(1)(i)(A). We hold, therefore, that the BIA's contrary determination is not based on substantial evidence, and we are compelled to reverse the Board's holding that Feresin is ineligible for asylum.

## II. Withholding of Removal

■ Because we reverse the BIA's decision that Feresin is ineligible for asylum, we must also consider whether he is entitled to withholding of removal. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 423, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Baballah*, 335 F.3d at 992; *Lal*, 255 F.3d at 1011. Where a petitioner establishes that he "suffered past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim." 8 C.F.R. § 208.16(b)(1)(i); *see also Baballah*, 335 F.3d at 992; *Salazar–Paucar v. INS*, 281 F.3d 1069, 1077 (9th Cir.), *as amended by* 290 F.3d 964 (9th Cir.2002). The record of the extreme persecution Feresin suffered compels the conclusion that Feresin has met his burden under the regulations and is entitled to a presumption that he is eligible for withholding of removal. Because the BIA did not consider that Feresin had met his burden, it did not have an opportunity to address whether the government had rebutted the regulatory presumption. *See* 8 C.F.R. § 208.16(b)(1). We therefore remand to the BIA for it to consider in the first instance whether the government has presented sufficient evidence to rebut the presumption that Feresin is entitled to withholding of removal.

## III. Conclusion

The record compels the conclusion that Feresin has shown that he is eligible for asylum because the severity of his persecution entitles him to the humanitarian exception of *Matter of Chen*. We also hold that the showing of past persecution entitles Feresin to a presumption that he is eligible for withholding of removal. Accordingly, we remand this case for the Attorney General to exercise his discretion as to whether to grant asylum and for the BIA to consider whether the government has rebutted the presumption that Feresin is entitled to withholding of removal.

**PETITION GRANTED; REMANDED** with instructions.